**Electronically Filed
Intermediate Court of Appeals
CAAP-12-0000691
23-APR-2014
09:37 AM**

NO. CAAP-12-0000691

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


RAJ KUMAR, Plaintiff-Appellant, v.
SUNITA KUMAR, Defendant-Appellee

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-D NO. 10-1-2108)


MEMORANDUM OPINION
(By: Nakamura, C.J., Fujise and Reifurth, JJ.)

Plaintiff-Appellant Raj Kumar ("Husband") appeals from the following orders entered by the Family Court of the First Circuit ("Family Court")[1]: the Decree Granting Divorce and Awarding Child Custody, filed on July 2, 2012 ("Decree"); the Order Denying Motion for Relief, filed on February 1, 2012 ("February 1, 2012 Order"); the Order Denying Plaintiff's Motion for Reconsideration, filed on March 9, 2012; and the order awarding attorney's fees, filed on April 2, 2012 ("April 2, 2012 Order"). Husband challenges various rulings made by the Family Court. We vacate certain portions of the Decree and that portion of the February 1, 2012 Order awarding fees, and affirm in all other respects.

---

[1] The Honorable Catherine H. Remigio presided over the proceedings germane to this appeal, except where stated otherwise.

I. BACKGROUND

On September 9, 2010, Husband initiated a divorce action against his wife, Sunita Kumar ("Wife"), with whom he had one daughter ("Daughter"). Over the ensuing months, the parties filed and litigated various motions, and the Family Court issued several orders.

On November 23, 2011, at a hearing scheduled to address some of these motions, the parties indicated that they were close to settling. The court proceeded to hold a settlement conference off the record, followed by a hearing ("Settlement Hearing") where the parties put the terms of the settlement agreement ("Settlement Agreement") on the record.

The terms relevant to this appeal, per the Settlement Agreement, were as follows (with the transcript quoted where relevant):

- Each party keeps his or her own possessions (e.g., clothes, furniture, jewelry, etc.), retirement accounts, debts in his or her name, and vehicle subject to any debt thereon.
- Each party keeps his or her own personal injury claim(s), and waives any consortium claims related to the other's claim(s).
- Wife gets sole legal and physical custody of Daughter but will consult with Husband regarding major decisions including education, change of religion, marriage, and foreign travel, although Wife is the ultimate decision-maker.
- Husband pays child support per the guidelines (amount expressly left unresolved).
- Wife has full authority to relocate with Daughter, subject to sixty days notice to Husband.
- "[Husband] agrees to pay $455.00 a month for 25 months. . . . [T]his is towards her educational expenses. After that, [Wife] is responsible for post-high school education. So this amount is payable regardless of whether [Daughter] is actually going to

2

private school. It is fully anticipate[d] that she'll finish [private school in Hawaii] this coming year. Depending on [Wife's] job situation, she may be here, she may be somewhere else. You know, she may be in New York where the tuition is more but [Husband's] only on the hook for $455.00. Or . . . if for some reason [Daughter's] not in a private school, then the 455 should go into that educational fund for college. So, in other words, it's always going to be 455 for 25 months and after that he's off the hook."[2]

- Husband will maintain a refundable $5,000 escrow account sufficient to fund his educational expense obligation, deposited within thirty days after the decree is signed and filed.

- Husband has reasonable visitation rights. The parties discussed travel expenses incident to visitation, agreeing that a vacationing spouse bears responsibility, with Husband saying "[i]f I take her to any mainland, Vegas, California or India, I'll pay, you know."

- Husband and Wife will split "[j]oint debts totalling [$]1600[.]"

- Each party will keep their own life insurance policies.[3]

- Wife will make an equalization payment to Husband of $40,000 within thirty days after the decree is signed and filed.

---

[2]    Husband queried at this point why he should pay if Daughter attends public school, to which Wife's counsel replied, "[b]ecause you're off the hook for everything else." Husband retorted that "[Wife is] off the hook for a lot of things, too." Husband did not press the issue further, and did not object when the court clarified that in any event the money "goes into the educational account, it's not going to [Wife]."

[3]    Apparently, the parties had also discussed a particular life insurance policy—a Banner Life insurance policy—that Husband was to attempt to reinstate and then transfer ownership to Wife. References were made later in the proceedings and on appeal to obligations regarding this policy; no such obligations were put on the record, however, although the parties do not appear to dispute that the discussion occurred.

After the terms had been recited, the court set a review hearing for December 28, 2011, to determine the unresolved amount of child support and to have the anticipated decree signed and filed. The court then queried the parties regarding their agreement to these terms; each agreed.

Two days after the Settlement Hearing, Wife gave notice to Husband's counsel that she would be relocating to New York. Husband had left the country the previous day, returning on December 23, 2011.

At the review hearing on December 28, 2011, Husband orally withdrew his request to correct an error in the child support calculations. The Family Court[4] entered the corresponding order that same day.[5]

On January 24, 2012, Husband filed a Motion for Relief in which he sought to litigate matters related to his payment obligations for Daughter's high school tuition, her enrollment in private school, custody, retrieval of personal belongings in Wife's storage unit, proposed escrow of Wife's equalization payment, payment towards a line of credit account, and additional payments including "GE tax for the investment property," "outstanding medical co-payments [Wife] incurred," and an "outstanding bill from Loveleen Saree $200 for her personal clothes orders[.]" His declaration in support of the Motion for Relief expressed, in part, various concerns with Wife's anticipated relocation to New York and Daughter's enrollment in public school there. Wife's memorandum in opposition asserted, in part, that

> Because [Husband] has filed this frivolous motion and disagreed with the wording of the final decree, the filing of the decree has been delayed pending the outcome of this motion. The parties reached an agreement. The [Family Court] is not in a position to modify the terms of the agreement.

On February 1, 2012, the Family Court held a hearing on

---

[4]     The Honorable James H. Hershey presided.

[5]     Neither the record nor the parties' briefs clarify why the anticipated divorce decree was not pursued that day. Presumably it related to Husband having learned of Wife's relocation plans.

Husband's Motion for Relief. Husband apprised the court that he had "decided that, given the difficulty in getting cooperation, he is relinquishing any claim to [his] items in [Wife's] storage[.]" The court then addressed the remainder of Husband's motion in a colloquy with Husband's counsel:

> THE COURT: And I had indicated that . . . I believe this motion was premature, and that I do not like to see a motion contesting an agreement that has not even been placed and filed. There's no decree that's been filed.
>
> And if I had to make a decision today on the motion, the only issue that I could see was possibly the storage issue, which has been withdrawn, basically, by your client. The rest of the items are either moot or should have been addressed during the time we were in court the last time, and are better as a postdecree motion.
>
> . . . .
>
> [Husband's counsel:] Your Honor, actually . . . at the time, it was contemplated that she would be moving in the summer, and at the time, the agreement was that she will continue to try to enroll [Daughter] in a private school, and only if [Daughter] cannot be accepted into a private school, that's when she would consider public school option. So therefore, this is not a frivolous request . . . , but because of this motion, . . . [Wife] has changed her actions. [6/]
>
> . . . .
>
> Additionally, there are issues that were not contemplated at the time of the agreement, including the issue of the GE tax for the investment property.
>
> THE COURT: Was it not contemplated, or did you guys just forget?
>
> [Husband's counsel:] We forgot about it. And we could not get an agreement from [Wife], and therefore, there was also no agreement regarding the medical (indiscernible) payment issue. So we thought that these are not frivolous issues, and we want the Court to address these issues.
>
> . . . .
>
> THE COURT: . . . .
>
> . . . [J]ust because the things you took into consideration might not be exactly what you thought they were, that doesn't mean that the agreement no longer stands, especially when it hasn't even been submitted to the Court. And so I find it to be a frivolous motion.
>
> So attorney's fees and costs to [Wife's counsel].

---

6/ Husband alleged that he learned shortly before the hearing that Wife would have Daughter finish the current quarter at her school and finish the remaining quarter online from New York.

The court then engaged in a colloquy directly with Husband, in which Husband expressed his understanding of decisions made regarding private versus public school and payment concerns. The court responded:

> I'm not going to redo the divorce decree. And I'm certainly not going to redo it when I don't even have a decree. The first thing that should have happened was I should have gotten decrees from both of you, if you folks can't agree to it. The last thing I want is another motion. We don't have a decree.

The court denied Husband's motion, ordered Husband to pay $1,000 in attorney's fees, and ordered the parties to submit proposed decrees within seven days.

Husband filed a Motion for Reconsideration of 2/1/2012 Order ("Motion for Reconsideration") on February 10, 2012, alleging that the court's earlier threat of sanctions relating to pursuit of his Motion for Relief (a threat it followed through on, see supra) violated his due process rights, and otherwise seeking to rehash his original arguments. On March 9, 2012, the court entered an order denying Husband's Motion for Reconsideration and granted Wife's request for attorney's fees related to that motion. The April 2, 2012 Order ordered Husband to pay $750 in attorney's fees.

Meanwhile, on February 7, 2012, Husband signed his proposed decree and submitted it to the court. On February 9, 2012, one day after the court's deadline, Wife submitted her proposed decree.[2] Thereafter, the parties, through counsel, submitted a series of letters to the court alleging and arguing about differences between the Settlement Agreement and each other's proposed decree. These differences included:

- Wife's proposed decree specified that no visitation occur outside the United States.
- Regarding the school tuition payments, Wife proposed

---

[2] Wife's proposed decree does not appear in the record. However, as discussed infra, apart from a few changes incorporated from Husband's proposed decree and some of the court's own acknowledged changes or additions, the court adopted Wife's proposed decree. Therefore, the contents of Wife's decree can be fairly inferred from the record.

that payments commence the first month following filing of the decree, while Husband proposed that they commence on December 1, 2011, "based on the months remaining for [Daughter] to finish [school in Hawai'i]."

- The parties each proposed language regarding medical expenses not covered by insurance, which had not been addressed by the Settlement Agreement. Husband proposed that Wife pay the first $500 of uncovered "ordinary medical and dental expenses," and that they share equally the cost of any uncovered extraordinary expenses exceeding $500 per year. Wife proposed that they share uncovered expenses based on relative income percentages.

- Wife's proposed decree specified that "portions of [Husband's] personal injury claim that have already been paid and been distributed by prior order of the Court should not be considered any further," while Husband contended that prior distributions paid to Wife should be reimbursed to Husband.

- Wife's proposed decree specified that each party pay one-half of items related to an Aloha Surf investment property that had been sold, including "GET taxes." Husband's proposed decree omitted any mention of the Aloha Surf property, which, he maintained, was consistent with the Settlement Agreement.

In one of the letters, Husband proposed that the court hold a Hawai'i Family Court Rules ("HFCR") Rule 16 conference to address the discrepancies. Wife objected. The court did not hold any conference or hearing prior to issuing the Decree.

On April 3, 2012, the Family Court contacted Wife's counsel to apprise him that the Decree would incorporate certain language from Husband's proposed decree. On April 24, 2012, the Family Court apprised Husband's counsel of its conversation with Wife's counsel.

On May 31, 2012, Husband's counsel sent the court a letter seeking "expeditious entry of the Decree[,]" noting that

the court was adopting Wife's proposed decree "with modification[,]" objecting to the school tuition payment commencement date, and alleging unfair treatment. On June 8, 2012, the court notified the parties that it would commence the school tuition payments effective March 8, 2012, being thirty days after the deadline for submission of the proposed decrees. On June 15, 2012, Husband sent a letter to the court explaining his reasons for refusing to sign the expected Decree.

On July 2, 2012, the court entered the Decree. Of note, it specified that:

- No visitation occur outside the United States.
- The twenty-five school tuition payments were to commence on March 8, 2012.
- Medical and similar expenses not covered by insurance would be shared by the parties according to their relative incomes, and that Husband would enable Wife to obtain continuation insurance coverage (i.e., "COBRA" coverage) but that Wife would be responsible for the premium payments.
- Wife would not be required to reimburse Husband for any personal injury claim proceeds that had already been distributed.
- Each party was to pay one-half of items related to the Aloha Surf investment property, including "GET taxes."
- Any party declaring bankruptcy would be liable to the other party for "such amounts as are necessary to put the non-bankrupt party in a position as favorable as he or she would have otherwise enjoyed under the terms of this Decree."

On July 31, 2012, Husband filed his Notice of Appeal.

On August 22, 2012, Husband filed a Motion to Enforce the Decree, seeking, among other things, to compel Wife to make her equalization payment pursuant to the Decree, along with penalties and interest. The court subsequently held hearings on these and other matters, eventually issuing an oral ruling on November 14, 2012. The record on appeal does not contain any orders that the court may have issued as a result of these

8

subsequent hearings.

On September 21, 2012, the court issued its Findings of Fact and Conclusions of Law Re: Divorce Decree Granting Divorce Awarding Child Custody Filed July 2, 2012 ("FOF/COL"). It provided, in relevant part:

FINDINGS OF FACT

1. On November 23, 2011, the parties reached a divorce settlement in this case and placed the settlement on the record. The settlement provided, in relevant part, as follows:

[The details of the original settlement were enumerated, in accordance with the transcript, with the addition of a provision stating that "[Husband] [shall] reinstat[e] his Banner Life insurance policy to be transferred to [Wife] who will be responsible for the premium payments subsequent to reinstatment [sic] and beneficiary designation (as owner)."]

2. On December 28, 2011, [Husband] withdrew his request to adjust the child support calculation.

. . . .

4. On February 1, 2012, the parties settled their disagreements regarding the items in storage. The settlement was that [Husband] relinquished everything in storage to [Wife] who is free to dispose of the items as she chooses.

. . . .

6. There was some delay in filing the final decree as both parties submitted proposed decrees, and there were several letters from both parties to the Court regarding the parties' positions on certain proposed provisions of the decree. . . .

7. On April 24, 2012, this Court, upon reviewing the proposed decrees submitted by the parties, directed that [Wife's] proposed decree would be adopted with the addition of language submitted by [Husband] regarding section 3.1 of the decree (relating to major decisions regarding [Daughter]), section 3.2 of the decree (relating to relocation), section 3.3 of the decree (relating to supporting [Husband's] relationship with [Daughter]), section 4.3 of the decree (relating to notification by [Wife] to [Husband] of accounting for the higher educational funds), and other minor items.

8. Upon request by both parties to clarify the date on which [Husband's] $455 per month educational payments were to begin, based on the agreement of the parties and the substantial delay caused by [Husband's] motions for reconsideration, this Court ordered, by minute order on June 8, 2012, that payments would begin 30 days after proposed decrees were to be submitted so that the starting date would be March 8, 2012.

9. [Wife's] proposed decree with modifications as requested by the Court as noted above was signed and filed on July 2, 2012.

## CONCLUSIONS OF LAW

1. The parties knowingly, intentionally, and voluntarily reached a settlement of all issues in this case on November 23, 2011, and placed the terms of the settlement on the record.

.  .  .  .

3. The [Decree] accurately reflected the agreement of the parties to the terms of the divorce as follows:

.  .  .  .

Paragraph 3 - sole legal and physical custody of [Daughter] was awarded to [Wife]

.  .  .  .

- visitation shall not occur outside the United States of America - this provision was requested by [Wife] and was reasonable for a minor.

Paragraph 3.1 - [Wife] to consult with [Husband] on all major decisions regarding [Daughter] with [Wife] having authority to make the final decision .  .  .  . Most of this language was adopted from [Husband's] proposed decree over objection of [Wife] that only limited matters were discussed on the record at settlement.

.  .  .  .

Paragraph 3.3 - relating to [Daughter's] relationship to both parents. This language was requested by [Husband], was reasonable, and was within the agreement of the parties although not explicitly stated on the record.

.  .  .  .

Paragraph 4.2 - educational expenses (see .  .  . [finding of fact #8] above).

.  .  .  .

Paragraph 5 - .  .  .  . Out of pocket medical, dental, vision, and drug expenses not covered by insurance or orthodontic expenses shall be shared by percentage according to income of the parties - standard language.

.  .  .  .

Paragraph 11 - real property - this paragraph merely described the history of the case stating that the parties' residential apartment and investment property had been sold and that the net proceeds of sales had been divided equally.

- this paragraph also provided for payment
of GET taxes and penalty and interest for the
investment property sold, as payment of joint
debts was agreed by the parties.

. . . .

Paragraph 16 - personal injury claims - each party
        kept their own personal injury claims and waived
        consortium claims on the other's claims.

                . . . [Wife] does not owe [Husband] any
        monies related to prior distributions of
        [Husband's] personal injury claim that were made
        prior to the signing and filing of this
        Decree. . . .

. . . .

Paragraph 19(a), (b), (d), (f) [bankruptcy provision],
        and (h) - standard language

II.  POINTS OF ERROR

        Husband's points of error do not all allege error, nor
are all errors he later argues reflected in the points of error.
Nevertheless, enumerated below are the errors he asserts or
argues.

- "The Family Court Failed The Appearance of Impartiality
  In Treating Party Litigants";
- The Settlement Agreement was induced by fraud;
- The Family Court's delay in entering the Decree "led to
  [Husband's] financial losses and emotional stress";
- Various provisions were erroneously inserted or
  modified into the Decree that were not part of the
  Settlement Agreement;
- The court violated Husband's due process rights by
  deeming his Motion for Relief frivolous;
- The court erroneously sanctioned Husband for his Motion
  for Relief and Motion for Reconsideration;
- The court wrongfully denied [Husband] visitation
  outside of the United States;
- The court erred by not sanctioning Wife;
- The court erred by not "appoint[ing] a Master to review
  Family's Assets and Debts and distribut[ing] proceeds
  from the sale of the property without addressing the
  family's debts";

11

- The court erred by "revers[ing] previous rulings about joint legal custody and health insurance";

- The court erred "in calculating and increasing child support payments without an explanation or an increase in personal income, not giving the calculation worksheet to [Husband] after ruling and not giving him the credit for the health insurance he paid for [Daughter] from July 1, 2012 to the present";

- The court erred by "distributing family assets . . . without reviewing Income and Expenses, and Assets and Debts statements[.]"

III. STANDARDS OF REVIEW

> Generally, the family court possesses wide discretion in making its decisions and those decisions will not be set aside unless there is a manifest abuse of discretion. Thus, [an appellate court] will not disturb the family court's decisions on appeal unless the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant and its decision clearly exceeded the bounds of reason.

*Fisher v. Fisher*, 111 Hawaiʻi 41, 46, 137 P.3d 355, 360 (2006) (quoting *In re Doe*, 95 Hawaiʻi 183, 189-90, 20 P.3d 616, 622-23 (2001)). "Furthermore, the burden of establishing abuse of discretion is on appellant, and a strong showing is required to establish it." *Ek v. Boggs*, 102 Hawaiʻi 289, 294-95, 75 P.3d 1180, 1185-86 (2003) (internal quotation marks, citation, and brackets omitted).

> The family court's [findings of facts ("FOF")] are reviewed on appeal under the "clearly erroneous" standard. A FOF is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made. "Substantial evidence" is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.

> On the other hand, the family court's [conclusions of law ("COL")] are reviewed on appeal de novo, under the right/wrong standard. COLs, consequently, are not binding upon an appellate court and are freely reviewable for their correctness.

*Fisher*, 111 Hawaiʻi at 46, 137 P.3d at 360 (citations, some internal quotations marks, brackets, and ellipsis omitted)

12

(quoting *In re Doe*, 95 Hawai'i at 190, 20 P.3d at 623). Additionally, "[t]he imposition of a sanction is generally within the discretion of the trial court." *Weinberg v. Dickson-Weinberg*, 123 Hawai'i 68, 71, 229 P.3d 1133, 1136 (2010) (quoting *Ek*, 102 Hawai'i at 299, 75 P.3d at 1190).

IV.  DISCUSSION

As an initial matter, Husband's opening brief fails to comply with Hawai'i Rules of Appellate Procedure ("HRAP") Rule 28(b)(4). There are numerous instances where Husband fails to cite to the record. *See* Haw. R. App. P. 28(b)(3), (b)(4), (b)(7). Husband also fails to confine and correlate his arguments to his points of error, *see* Haw. R. App. P. 28(b)(4), (b)(7), resulting in a scattershot of alleged error and untethered arguments that, at times, verges on the incomprehensible. Nevertheless, consistent with our "policy of affording *pro se* litigants the opportunity 'to have their cases heard on the merits, where possible,'" *Hawaiian Properties, Ltd. v. Tauala*, 125 Hawai'i 176, 181 n.6, 254 P.3d 487, 492 n.6 (App. 2011) (quoting *O'Connor v. Diocese of Honolulu*, 77 Hawai'i 383, 386, 885 P.2d 361, 364 (1994)), we proceed to address Husband's arguments.

A.  Husband fails to demonstrate judicial bias.

Husband contends that the Family Court judge "failed the appearance of impartiality," resting on the court's handling of his Motion for Relief, for which Husband was ultimately sanctioned, and the court's substantial adoption of Wife's proposed divorce decree. Because Husband cites nothing more than the court's rulings,[8] he fails to establish any lack of impartiality or the appearance thereof. *See State v. Ross*, 89

---

[8]    Husband suggests that Judge Remigio was predisposed to adopt Wife's decree, citing a statement she made at the hearing on Husband's Motion for Relief: "I may or may not sign that or add it to [Wife's] decree." In context, however, "that" and "it" refer to a waiver exchange provision, and "that" also refers to Husband's expected decree. Thus, it appears she was not indicating an inclination to sign either decree; the statement therefore reflects no bias.

Hawai'i 371, 379, 974 P.2d 11, 19 (1998) ("[A]dverse rulings, even if erroneous, do not establish bias . . . ." (citing *Peters v. Jamieson*, 48 Haw. 247, 257, 397 P.2d 575, 583 (1964))).

    B.    Husband effectively waived his argument that his agreement to settle was induced by fraud or misrepresentation.

Husband alleges that Wife misrepresented her intentions regarding relocation. He argues that the timing of her notice of relocation—two days after the Settlement Hearing—is proof of that misrepresentation, and that part of his motivation to settle was to spend time with Daughter without "the stress of litigation on both parents." Husband, however, has waived this argument by failing to raise it below.[2/] *See Child Support Enforcement Agency v. Doe*, 109 Hawai'i 240, 246, 125 P.3d 461, 467 (2005) ("An issue which was not raised in the lower court will not be considered on appeal." (citing *Kernan v. Tanaka*, 75 Haw. 1, 35, 856 P.2d 1207, 1224 (1993), *cert. denied*, 510 U.S. 1119 (1994))).

    C.    Wife's delay in making her equalization payment, and damages flowing from the timing of the Family Court's entry of the Decree, or any alterations, are not issues for this court to resolve.

Husband argues that he suffered economic and emotional harm from the Family Court's alleged delay in entering and altering the Decree, and from Wife's delay in satisfying her obligation to make an equalization payment to him. He asks this court to consider "[w]hether [the Family C]ourt's failure to timely file a Decree caused [him] substantial damages[,]" and invites us to consider the Family Court's post-notice of appeal decisions regarding the respective payments owed by the parties to each other. While Husband's assertions of error are not clearly set forth—he discusses Wife's equalization payment, the commencement of a fixed number of school payment obligations, and the exchange of personal injury claim waivers—the thrust of his

---

    [2/]    Husband asserts that he "attempted to bring this issue before the court in his [Motion for Relief]." Nowhere in that motion, however, did he assert his reliance on her alleged misrepresentation, nor did he seek therein to undo the parties' agreement.

argument appears to be that the Family Court abused its discretion in both the timing of its entry of the Decree and its determination of how the parties' payment obligations should be enforced. *See Thomas-Yukimura v. Yukimura*, 130 Hawai'i 1, 6, 304 P.3d 1182, 1187 (2013) ("Construing [a pro se party's] arguments liberally . . . ." (citing *Dupree v. Hiraga*, 121 Hawai'i 297, 315, 219 P.3d 1084, 1102 (2009))).

With respect to the allegedly delayed filing of the Decree, even were the delay unjustifiable, there does not appear to be any authority supporting an award of damages payable by the Family Court, and Husband cites to none. To the extent that he seeks to adjust the parties' obligations under the terms of the Decree, or impose new ones apart from the Decree, as compensation for the alleged harm caused by delayed receipt of the equalization payment or delayed execution of personal injury waivers, such harm is similarly non-compensable; nothing in the Settlement Agreement was predicated upon timely entry of the Decree. With respect to Wife's alleged delay in making her equalization payment and the Family Court's handling of this issue, these are matters to be pursued with the Family Court in the first instance. *See Child Support Enforcement Agency*, 109 Hawai'i at 246, 125 P.3d at 467. Regarding Husband's school payment obligation, this issue is discussed in Part IV.D.9, *infra*.

    D.    Several of the Family Court's modifications to the Settlement Agreement must be vacated.

Husband challenges as error several provisions of the Decree that were not specified or agreed to as part of the Settlement Agreement. These provisions were included either because Wife included them in her proposed decree or upon the court's own initiative. Husband does not seek to undo the Settlement Agreement, but, rather, he seeks to invalidate the provisions that he contends were not part of the Settlement

Agreement.[10]/

Under a prior decision of this court, a family court, having approved a settlement agreement, may not freely vary or augment the terms of that agreement when subsequently entering the divorce decree. In *Bienvenue v. Bienvenue*, this court addressed a situation substantially similar to that at hand:

> In this case, (1) Suzanne filed a proposed decree; (2) Michael expressly disagreed with specific provisions in Suzanne's proposed decree; (3) after a hearing on a motion to set attended by the attorneys for both parties, the court entered an order noting that there was no dispute regarding the division and distribution of any personal property other than "retirement"; (4) the parties stated on the record, and the family court approved, a final settlement agreement resolving the case; (5) in the final settlement agreement, the parties expressly resolved some issues created by Michael's express disagreements and did not expressly reserve the final division of any property of the parties for further hearing, decision, and order; and (6) the family court entered a divorce decree containing more details regarding the division and distribution of the personal property.

102 Hawai'i 59, 65, 72 P.3d 531, 537 (App. 2003). To address "whether the family court was authorized to insert . . . additional details in the . . . Decree," *id.* at 65, 72 P.3d at 538, we reviewed those portions of the decree that were extraneous or contrary to the parties' settlement agreement. In

---

[10]/     The manner in which the Family Court adopted the Decree calls into question whether there had been a meeting of the minds on all essential terms comprising the Settlement Agreement. *See Honolulu Rapid Transit Co. v. Paschoal*, 51 Haw. 19, 26, 449 P.2d 123, 127 (1968) ("[T]here must be mutual assent or a meeting of the minds on all essential elements or terms in order to form a binding contract."). The Family Court, apparently to its credit, succeeded in having the parties enter into the Settlement Agreement. The parties thereafter identified additional issues about which the agreement was silent and made clear their differing views on those issues. The parties' positions also differed regarding the onset of periodic school payments. *See infra* Part IV.D.9.

Despite these differences, the Family Court adopted in its Decree one or the other party's proposed modifications without determining that the parties agreed to its adoptions, despite the fact that Husband had requested an HFCR Rule 16 conference (to which Wife objected). Ultimately, the Family Court stated in its FOF/COL that "[t]he Decree Granting Divorce Awarding Child Custody filed by this Court on July 2, 2012, accurately reflected the agreement of the parties to the terms of the divorce"; it then recited the terms of the agreement, including those which it had introduced over objection. Neither party has argued, however, that the Settlement Agreement or the Decree is therefore unenforceable. Nevertheless, a Family Court should exercise caution when effectuating a settlement agreement; it ought to ensure that the parties do in fact agree to all of the essential terms of that settlement agreement.

two instances, we vacated provisions inserted by the family court that addressed issues left unaddressed by the settlement agreement. *Id.* at 69-70, 72, 72 P.3d at 541-42, 544 (survivor benefit plan premium payment provision and jurisdiction/alimony recharacterization provisions). Furthermore, we vacated a provision that was both prejudicial and contrary to what one of the parties had agreed. *Id.* at 70, 72, 72 P.3d at 542, 544 (restrictive merger/waiver provision). On the other hand, we let stand unchallenged provisions that were "reasonable, nonsubstantive enforcement provision[s]." *Id.* at 71-72, 72 P.3d at 543-44 (indemnification, constructive trust, and bankruptcy provisions).

Thus, a family court, proceeding pursuant to an approved settlement agreement, is not authorized to enter a provision that is either contrary to the settlement agreement or prejudicial to a party regarding an issue on which the agreement was silent. *See id.* at 69-70, 72, 72 P.3d at 541-42, 544; *see also Nakata v. Nakata*, 3 Haw. App. 51, 56, 641 P.2d 333, 336 (1982) ("If at the time the divorce was granted the lower court decided to change the Agreement before incorporating it into the decree, it would have been required to obtain the consent of both parties or to move the case from the uncontested calendar to the contested calendar."). A family court is authorized, however, to augment the settlement agreement by adding reasonable, nonsubstantive enforcement provisions. *Bienvenue*, 102 Hawai'i at 71-72, 72 P.3d at 543-44.

## 1. General excise taxes

The issue of payment of general excise taxes (referred to in the record and elsewhere herein as "GE" or "GET" taxes) on the parties' investment property was never specifically discussed at settlement. Wife, however, apparently requested via her proposed decree that the parties split the obligation. Between the time of the Settlement Hearing and the parties' submission of their respective proposed decrees, the parties staked out contrary positions regarding liability for the tax obligation. The court did not make any findings on this issue; rather, in the

Decree, it regarded the obligation as a joint debt and, consistent with the parties' agreement as to joint debts, directed that the tax obligation be shared equally. However equitable or reasonable its determination, it was not authorized to resolve the dispute by simply adopting Wife's position that this should be treated as a joint debt, particularly where Husband disagreed.[11/] Therefore, we vacate that portion of the decree assigning responsibility for general excise taxes. *Id.* at 70-72, 72 P.3d at 542-44.

### 2. Child custody

Husband argues that it was error for the Family Court to include in the Decree a provision that visitation not be permitted outside the United States. He also argues that he should be awarded joint custody and, separately, asks that this court "write a letter allowing [Husband] to be able to talk to [Daughter's] teachers/counselors regarding her progress in studies [and] extracurricular activities." Husband's first point has merit; the other two do not.[12/]

At the Settlement Hearing, Husband mentioned the possibility of traveling to India with Daughter. While the parties agreed that Wife would have sole legal and physical custody, they also agreed that Wife would consult Husband regarding major decisions, which expressly included international travel. In Wife's proposed decree, however, she apparently

---

[11/]    The court stated in its FOF/COL that the Decree "accurately reflected the agreement of the parties." The court was effectuating a settlement agreement, where each party gave up certain rights and benefits in exchange for others; to that end, regarding disputed issues, it should have worked for or with the parties to resolve those disputes. *See* Haw. Fam. Ct. R. 16. Where they would not come to terms, the court could have omitted such issues from the Decree or, if those terms were necessary to decide, reset the case on the contested divorce calendar. In this case, because the parties had agreed to equally divide all joint debts, it would have been reasonable to omit the specific issue and to address it on a subsequent post-decree motion.

[12/]    Husband agreed to an award to Wife of sole legal and physical custody. Even if he has not waived any subsequent claim to custody, he did not move below for modification of custody, and he cannot ask this court to rule on that matter in the first instance. *Child Support Enforcement Agency*, 109 Hawai'i at 246, 125 P.3d at 467. Similarly, he did not move below for access to Daughter's record, teachers, or counselors; he is therefore likewise barred from requesting that relief in this appeal. *Id.*

requested that the court prohibit any visitation outside the United States; the court included this provision in the Decree. The court reasoned that such a restriction "was reasonable for a minor."

This restriction was inconsistent with the provision that Wife would consult Husband regarding Daughter's international travel and addressed a matter about which the Settlement Agreement was silent. While Mother might be well within her rights as the custodial parent to deny an international visitation request, it was contrary to the Settlement Agreement, not to mention unduly restrictive, for the court to unilaterally foreclose such visitation. This provision, too, is vacated. *Id.*

### 3. Child support

Husband seeks to have the child support provision reworded, asserting that it is "confusing" with respect to when his obligation terminates and on what conditions it might continue past Daughter's eighteenth birthday. He then proposes a substantively different version, but does not provide any further argument as to why the court should or must adopt it. Husband's argument does not establish error.

### 4. Medical and dental insurance

Husband argues that it was error for the court to adopt Wife's provision requiring the parties to pay an income-based percentage of medical costs not reimbursed by insurance, including those arising from elective procedures. Following the Settlement Agreement, which had been silent on such costs, Husband and Wife presented the court with differing positions on this issue. Therefore, pursuant to *Bienvenue*, the court erred by summarily adopting Mother's position, and that portion of the provision addressing medical costs not covered by insurance is vacated. *Cf.* discussion *supra* Part IV.D.1.

### 5. Life insurance

The Settlement Agreement specified that the parties

19

would "keep their own" life insurance policies. While it does not appear in the Settlement Hearing transcript, the parties apparently also agreed that Husband would attempt to reinstate a particular life insurance policy and transfer ownership of it to Wife. Husband disputes, and disputed below, the requirement in that provision that he bear responsibility for any reinstatement costs. Wife responds that, pursuant to a hearing held after Husband's Notice of Appeal, the issue is moot. Whether the issue is moot or not, we vacate the disputed requirement that Husband bear the reinstatement costs; if, upon remand, the Family Court concludes that the policy reinstatement provision is indeed moot, it can strike the provision entirely.

### 6. Division of vehicles

Husband contends that it was unfair to award the parties their respective vehicles subject to any existing loans. His argument fails, however, because he agreed to those terms at the Settlement Hearing, and he does not argue that the agreement was unconscionable or otherwise unenforceable. *See Chen v. Hoeflinger*, 127 Hawai'i 346, 356, 279 P.3d 11, 21 (App. 2012) ("[M]arital agreements are enforceable if the agreement 'is not unconscionable and has been voluntarily entered into by the parties with knowledge of the financial situation of the prospective spouse.'" (quoting *Epp v. Epp.*, 80 Hawai'i 79, 85, 905 P.2d 54, 60 (App. 1995))). He cannot now claim error.[13]/

### 7. Health insurance continuation coverage ("COBRA")

Husband requests that the provision requiring him to enable Wife to "obtain medical insurance coverage under [his employer's] COBRA plan" be stricken. Wife argues that this "is a standard provision in divorce decrees," is consistent with requirements under federal law, and does not disadvantage Husband

---

[13]/ Husband also contends that the decision to distribute the vehicles and accompanying loans "was made with [Wife's] counsel and [Wife] without the presence of [Husband] in the court room." He did not raise this argument below, however, and has therefore waived it. *See Child Support Enforcement Agency*, 109 Hawai'i at 246, 125 P.3d at 467.

since Wife pays all premiums. Wife does not provide authority to support her assertion that the provision is "standard," but her other reasons are sufficient for this court to conclude that it is a reasonable, nonsubstantive enforcement provision. *See* 29 U.S.C. §§ 1161-1166 (2012) (requiring employer health insurance plans to offer continuation coverage upon certain qualifying events, including divorce); *cf. Bienvenue*, 102 Hawai'i at 71-72, 72 P.3d at 543-44.

### 8. Bankruptcy clause

Husband argues that since a bankruptcy provision was never discussed, it was error to include one. Husband's argument fails, as *Bienvenue* holds just the opposite. *Bienvenue*, 102 Hawai'i at 71-72, 72 P.3d at 543-44 (holding that a substantially identical bankruptcy provision was a "reasonable, nonsubstantive enforcement provision").

### 9. School tuition payments

Husband contends that it was error to require him to make twenty-five monthly payments of $455 regardless of whether Wife enrolled Daughter in public or private school and regardless of when his payment obligations commenced. Regarding public versus private school, he specifically agreed at the Settlement Hearing to make the payments regardless of what type of school Daughter attended. He cannot now argue on appeal that he intended a different agreement. *See Chen*, 127 Hawai'i at 356, 279 P.3d at 21; *see also State v. Ngo*, 129 Hawai'i 30, 39-40, 292 P.3d 1260, 1269-70 (2013) (applying the doctrine of judicial estoppel to preclude a party from advancing a position directly contrary to an earlier one).

The parties, however, failed to specify a start date for the payments. Husband argued below, and argues again on appeal, that the determination of the number of payments to be made derived from the number of expected months remaining in Daughter's high school education as of the Settlement Hearing. Accordingly, his proposed decree posited a start date of December 1, 2011. He asserts prejudice because the Family Court

21

specified a start date of March 8, 2012, despite the fact that he was already making ongoing monthly $455 payments to Daughter's school apart from any settlement agreement; in his view, he was therefore making double payments for five months.  Wife, on the other hand, argued below that Husband's obligation simply required him to pay $11,375 in twenty-five monthly payments toward Daughter's educational costs, which were to commence once the Decree became effective.[14]/

The dispute regarding the commencement date persisted by way of letters to the court, as finalization of the Decree was delayed while Husband's purported double payments continued.  On June 8, 2012, the Family Court notified the parties that it would use a payment commencement date of March 8, 2012, as that was thirty days after proposed decrees were to be submitted.  Husband renewed his objection.  On July 2, 2012, the Family Court entered the Decree, including the March 8 start date, and stated in its subsequent FOF/COL that:

> [FOF] 8. Upon request by both parties to clarify the date on which [Husband's] $455 per month educational payments were to begin, *based on the agreement of the parties* and the substantial delay caused by [Husband's] motions for reconsideration, this Court ordered, by minute order on June 8, 2012, that payments would begin 30 days after proposed decrees were to be submitted so that the starting date would be March 8, 2012.

(Emphasis added.) As the parties had plainly not agreed to this term, this finding is clearly erroneous.[15]/  Therefore, we vacate this FOF and, pursuant to *Bienvenue*, vacate as well the Decree's March 8, 2012 payment commencement date.  102 Hawai'i at 69-70, 72, 72 P.3d at 541-42, 544.  On remand, the Family Court should

---

[14]/     Wife argues on appeal that, after acknowledging that the commencement date was not specified at the Settlement Hearing, "[b]oth the . . . Decree actually entered and [Husband's] proposed decree provided that it was effective when signed and filed.  As such, the Family Court could have ordered that the monthly payments started upon the filing of the . . . Decree."  This argument, however, ignores the fact that Husband's proposed payment commencement date was independent of the decree filing date.

[15]/     To the extent that the rationale for the start date might essentially be a sanction occasioned by "the substantial delay caused by [Husband's] motions for reconsideration," the Family Court had already twice sanctioned Husband for that delay; the Family Court's rationale therefore appears to be that the parties agreed to that start date.

determine the total amount due and what date, if any, the parties had agreed to at the time of the Settlement Hearing, or thereafter.[16]

E.    The Family Court abused its discretion in sanctioning Husband for pursuing an allegedly frivolous motion.

Husband argues that the Family Court erroneously determined that his Motion for Relief was frivolous. Husband filed his motion after learning that Wife intended to relocate sooner than he expected, and before either party had submitted a proposed decree. The issues he sought to litigate involved either reconsideration of certain provisions of the Settlement Agreement in light of Wife's imminent relocation or additional terms he wanted added that were not previously discussed. One of the issues—the only one the Family Court deemed meritorious—was withdrawn prior to the hearing.

While some aspects of Husband's motion appear to revisit settled issues, the fact that his motion was prompted by the proposed immediate relocation of Daughter, which Husband had not expected or anticipated, suggests that his motion was not frivolous. Furthermore, while the Family Court viewed parts of Husband's motion as essentially seeking to amend a decree that had not been entered, let alone even proposed by either party, he was instead seeking to address matters unaddressed by the Settlement Agreement. While a Family Court is generally afforded wide discretion, *see Fisher*, 111 Hawai'i at 46, 137 P.3d at 360, in light of the reasons for Husband's motion and the evident problems with attempting to finalize an incomplete and disputed settlement without a hearing, *see supra* Part IV.D, the Family Court abused its discretion in sanctioning Husband for pursuing his Motion for Relief. Based on the foregoing analysis, we also conclude that the Family Court erred in sanctioning Husband for filing his subsequent Motion for Reconsideration.

---

[16]    If the Family Court cannot determine that the parties agreed to a total amount due or start date, it should address whether those terms were essential terms of the Settlement Agreement, and, if so, what effect that has on the school tuition payment provision and the overall Settlement Agreement. *See Honolulu Rapid Transit Co.*, 51 Haw. at 26, 449 P.2d at 127.

F.  Husband has waived or is estopped from asserting several additional points of error.

Husband submits that the court erred by failing to appoint a special master to review assets and debts, and by distributing property sale proceeds without first addressing the family's debts.  He fails, however, to offer any argument to support his assertion, and, therefore, waives the point.[17/]  *See Simmons*, 129 Hawai'i at 511, 304 P.3d at 652.

Husband contends that unspecified rulings made prior to the Settlement Agreement regarding custody and health insurance were erroneous.  Here too, he fails to advance any argument, and has waived the point.  *Id.*

Husband contends that the Family Court erred in its calculation of his child support obligations.  While Husband initially moved the court to correct its calculations, he expressly withdrew that objection several weeks later; the child support payment was then finalized pursuant to the Decree.  He cannot now renew his argument on appeal.[18/]  *See Ngo*, 129 Hawai'i at 39-40, 292 P.3d at 1269-70.

Husband contends that the Family Court erred in distributing various assets.  Husband provides no discernable argument that the distribution was erroneous.  Furthermore, the Decree's asset distribution provision was consistent with the Settlement Agreement.  Accordingly, we find no error.  *See Simmons*, 129 Hawai'i at 511, 304 P.3d at 652.

Husband lists several different bases upon which he alleges the Family Court's failure to levy sanctions against Wife was error.  It is not apparent, however, that Husband moved below for sanctions on these grounds.  Moreover, the decision to award sanctions is entrusted to the Family Court's sound discretion.

---

[17/]  In his reply brief, Husband appears to redefine his assertion of error as relating to his request for Wife to deposit $40,000 in escrow before moving to New York in light of the court's order that Husband keep $5,000 in escrow.  How these considerations relate to his original assertion of error is indiscernible and, in any event, they do not constitute argument.

[18/]  In his reply brief, Husband refers to hearings with the Child Support Enforcement Agency, but he does not explain their relevance.

*Cf. State v. Ahlo*, 79 Hawai'i 385, 398, 903 P.2d 690, 703 (App. 1995). For these reasons, we find no error. *See* Haw. R. App. P. 28(b)(4) ("Each point [of error] shall state . . . where in the record the alleged error occurred; and . . . where in the record the alleged error was objected to or the manner in which the alleged error was brought to the attention of the court or agency.").

Finally, Husband attempts to argue issues relating to the personal injury claims and/or waivers. Specifically, he seeks reimbursement of $11,553.18. His supporting argument, however, goes so far afield as to render it incomprehensible.[19] He has therefore waived any error relating to the personal injury claims.[20] *See* Haw. R. App. P. 28(b)(7); *Ala Moana Boat Owners' Ass'n v. State*, 50 Haw. 156, 158, 434 P.2d 516, 518 (1967).

V.    CONCLUSION

For the reasons expressed above, we vacate 1) the following provisions of the Decree: a) paragraph 3, regarding the limitation on international visitation, b) paragraph 4.2, regarding the March 8, 2012 payment commencement date, c) paragraph 5, regarding out-of-pocket medical, dental, vision, and drug expenses, d) paragraph 6, regarding the requirement that Husband bear the reinstatement costs, and e) the final sentence of paragraph 11, regarding general excise taxes; 2) FOF 8 from the FOF/COL; and 3) those portions of the February 1, 2012 Order and April 2, 2012 Order that awarded attorney's fees to Wife.

The Decree; the February 1, 2012 Order; the Order Denying Plaintiff's Motion for Reconsideration, filed on March 9, 2012; and the April 2, 2012 Order, are affirmed in all other

---

[19]    Wife argues that Husband confirmed that he understood that he was giving up certain rights to Wife's claims. Whether or not this is dispositive of Husband's argument is not determinable in light of the argument's incomprehensibility.

[20]    While the parties disputed below whether the Family Court should have revisited distributions of personal injury claim proceeds occurring prior to the Settlement Agreement, and the Family Court agreed with Wife's proposed decree on this point, Husband does not appear to argue that the Family Court's decision was erroneous in this regard.

respects. The case is remanded to the Family Court for further proceedings consistent with this opinion.

DATED: Honolulu, Hawai'i, April 23, 2014.

On the briefs:

Raj Kumar,
Pro Se Plaintiff-Appellant.

Glenn N. Taga
(Park & Taga)
for Defendant-Appellee.

*Craig H. Nakamura*
Chief Judge

*[signature]*
Associate Judge

*[signature]*
Associate Judge